IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:13cr129 (JCC/IDD) |
| | ) | |
| BRITA LANETTE JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court following a bench trial held on June 4, 2013, pursuant to a criminal indictment against Defendant Brita Lanette Jackson (hereafter referred to as "Defendant" or "Defendant Jackson"). Defendant has been charged in a two-count indictment with making a false statement in connection with the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6), as well as conspiracy, in violation 18 U.S.C. § 371. After reviewing and considering the relevant evidence, including exhibits and testimony, the Court, for the reasons set forth below, finds Defendant guilty on both counts, and makes the following findings of fact and conclusions of law.

### I. Findings of Fact

The Court adopts the parties' stipulated trial testimony. Virginia Arms is a federally licensed firearms dealer, located at 9760 Center Street in Manassas, Virginia,

1

within the Eastern District of Virginia.[1] (Stipulated Testimony ("Stip. Test.") ¶ 1.) As a firearms merchant, Virginia Arms is committed to complying with federal firearms laws. (*Id*. at ¶ 2.) Brett Simon (hereafter referred to as "Mr. Simon") is a sales manager at Virginia Arms. He has conducted thousands of firearms transactions. Like Virginia Arms, Mr. Simon is committed to complying with federal firearms laws. As such, he is vigilant during firearms transactions to detect any indication that a purchase might be illegal. (*Id*.)

On May 24, 2012, Defendant entered Virginia Arms. (*Id*. at ¶ 3.) The purpose of her visit was to purchase a Draco 7.62mm AK-47 type pistol. (*Id*.) The firearm was manufactured in Romania and imported by Century Arms, a corporation located in Vermont. (*Id*.)

Mr. Simon is familiar with the Draco line of firearms. (*Id*.) He was immediately intrigued that Defendant, a slight woman in her fifties, would purchase a powerful 7.62mm assault pistol, as the weapon's substantial recoil would present a considerable challenge to Defendant's ability to use the firearm. He also noted that the weapon was not a typical choice for use in self-defense. (*Id*. at ¶ 4.) Mr. Simon began filling out the paperwork required to transfer the firearm to Defendant. (*Id*. at ¶ 5.) While doing filling out the paperwork, Mr. Simon

---

[1] The parties have agreed and stipulated to certain testimony that would be given by certain named witnesses.

discussed the firearm with Defendant and realized that Defendant knew practically nothing about firearms. (*Id.*) Despite claiming to be a collector of firearms, Defendant could not correctly identify the caliber of the Draco firearm that she was purchasing. (*Id.*) She also indicated that the firearm fired a 9mm handgun bullet while Mr. Simon knew that the weapon fired a far larger 7.62mm rifle round. (*Id.*)

Defendant provided Mr. Simon with identification in the form of her driver's license and motor vehicle registration, both of which Mr. Simon photocopied. (*Id.* at ¶ 6.) Defendant completed ATF Form 4473 as Mr. Simon and other employees of Virginia Arms watched. Question 11a, located on page one of the form, asked Defendant "[a]re you the actual transferee/buyer of the firearm(s) listed on this form?" A warning immediately followed, emphasized in bold-faced type, stating:

> Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you.

(*Id.* at ¶ 7; ATF Form 4473 1.) Defendant marked the box labeled "yes" in response to question 11a on ATF Form 4473, thereby stating that she was actual transferee/buyer of the firearm. (*Id.*)

Mr. Simon and the owner of Virginia Arms discussed Defendant and became convinced that she was purchasing the

firearm for someone else, which would constitute a violation of federal law. Mr. Simon asked Defendant orally about the identity of the person who the gun was actually for and Defendant indicated that the firearm was for her, as she had done on ATF Form 4473. (*Id*. at ¶ 8.)

The owner of Virginia Arms subsequently contacted the Bureau of Alcohol, Tobacco, Firearms, and Explosives (hereafter referred to as "the ATF"). (*Id*. at ¶ 9.) The owner of Virginia Arms agreed to stall the Defendant while ATF agents were dispatched to the store. (*Id*.)

Defendant appeared nervous and impatient while the paperwork for the firearm transaction was in the process of being completed. She said that her friend outside could not wait much longer. Mr. Simon and other Virginia Arms employees observed a Cadillac with an African-American male driver waiting in the parking lot of the store. (*Id*. at ¶ 10.)

Once ATF agents informed Virginia Arms employees that they were in positions surrounding the store, Mr. Simon gave the Draco 7.62mm pistol to Defendant. She then left the store carrying the firearm. (*Id*. at ¶ 11.)

Jeffery P. Grabman (hereafter referred to as "Agent Grabman") is a special agent with the ATF and has been since 1992 and has investigated firearms trafficking cases for much of his career. (*Id*. at ¶ 12.) On May 24, 2012, Agent Grabman was

one of approximately eight agents dispatched to Virginia Arms in response to the owner's report of a suspected illegal "straw purchase" of a firearm.[2] (*Id.*) While in the parking lot of Virginia Arms, Agent Grabman used binoculars to observe the driver of a Cadillac that had reportedly been waiting for the suspected straw purchaser. (*Id.* at ¶ 13.) Agent Grabman knew that the vehicle was registered to a convicted felon from Winchester, Virginia named Timothy McLeod (hereafter referred to as "Mr. McLeod"). (*Id.*) Agent Grabman had Mr. McLeod's driver's license photograph sent to his smartphone, and was thereafter able to determine that the Cadillac's driver was indeed Mr. McLeod. (*Id.*)

Agent Grabman observed Defendant emerge from Virginia Arms with the firearm that she had just purchased. (*Id.* at ¶ 14.) Defendant entered Mr. McLeod's vehicle and the vehicle left the Virginia Arms parking lot. (*Id.*) The agents followed the vehicle to Mr. McLeod's residence, located at 822 Butler Avenue in Winchester, Virginia. (*Id.*)

While at the residence, Agent Grabman watched as Mr. McLeod and Defendant entered the house. (*Id.* at ¶ 15.) Shortly thereafter, Defendant emerged from the residence alone and

---

[2] A "straw purchase" of a firearm has been described as a sale where the individual making the purchase represents himself to be the actual buyer, but is actually the agent of another person who will receive possession of the firearm. *See United States v. Nelson*, 221 F.3d 1206, 1208-09 (11th Cir. 2000).

5

retrieved the firearm from Mr. McLeod's vehicle.  (*Id.*)  Agent Grabman and other ATF agents attempted to stop Defendant.  (*Id.*) Agent Grabman was wearing a bullet-proof vest and a badge around his neck.  Agent Grabman exited his vehicle, drew his firearm, identified himself as a federal agent, and ordered Defendant to stop. (*Id.*)  Defendant did not comply with his command to stop. Instead, Defendant entered the house with the gun and locked the door behind her.  (*Id.*)

Agent Grabman and other agents entered the residence and detained Defendant and Mr. McLeod.  (*Id.* at ¶ 16.)  ATF agents and local police officers searched the house, seizing the Draco 7.62mm pistol that Defendant has just purchased.  (*Id.*) Law enforcement also seized the following items: a Taurus PT709 9mm handgun, an "upper" or barrel of a Mac-10 assault pistol, an SKS magazine capable of use in the Draco pistol purchased by Defendant on that day, three firearm holsters, assorted rifle and pistol ammunition, the bill of sale for a Taurus handgun, the bill of sale for a Glock 33 handgun, the bill of sale for a Beretta 9005 handgun, and assorted Valley Trader magazines that had circles around classified advertisements for firearms. (*Id.*)  The bill of sale for the Glock 33 handgun was dated May 9, 2012, but the Glock handgun itself was not located in the residence.  (*Id.*)  The Beretta 9005 handgun listed in the bill of sale was also absent from the residence.  (*Id.*)

6

Agent Grabman then attempted to speak with Defendant. (*Id.* at ¶ 17.) Defendant agreed to speak with him and told him that she had purchased the Draco Ak-47 type pistol at the request of Mr. McLeod and with the intent of giving the firearm to Mr. McLeod. (*Id.*) Defendant knew that Mr. McLeod was a convicted felon and she had purchased firearms for him because he was unable to purchase them himself. (*Id.*) Defendant estimated that she had purchased between fifteen and twenty firearms for Mr. McLeod between January of 2012 and May 24, 2012. (*Id.*) According to Defendant, Mr. McLeod would circle firearms in Valley Trader magazines that he wanted Defendant to purchase. Defendant would then contract the seller, complete the transaction, and give the firearms to Mr. McLeod. (*Id.*) Defendant told Agent Grabman that she did not know what Mr. McLeod was doing with the firearms after she purchased and gave them to him. (*Id.*)

The parties have also stipulated to the testimony of several individuals that engaged in firearms transactions with Defendant prior to May 24, 2012.

James Montgomery (hereafter referred to as "Mr. Montgomery") advertised the sale of his Glock 33 .357 pistol in Valley Trader magazine. (*Id.* at ¶ 18.) He was contacted by Defendant and agreed to sell her the firearm. (*Id.*) On May 19, 2012, Mr. Montgomery sold Defendant the Glock pistol in the

parking lot of a Best Buy in Winchester, Virginia.  (*Id*. at ¶ 19.)

On May 23, 2012, Donald Gene Hart (hereafter referred to as "Mr. Hart") sold a Taurus PT709 9mm pistol to Defendant. (*Id*. at ¶ 20.)  Defendant purchased the pistol at Mr. Hart's residence.  (*Id*. at ¶ 21.)  Defendant told Mr. Hart that the firearm was for personal protection.  (*Id*.)

Charles E. McWilliams, Jr. (hereafter referred to as "Mr. McWilliams") listed a Cobray Mac-11 assault pistol in Valley Trader magazine.  (*Id*. at ¶ 22.)  Defendant attempted to purchase the firearm from Mr. McWilliams on January 4, 2012. (*Id*. at ¶ 23.)  According to Mr. McWilliams, Defendant seemed unfamiliar with the firearm, but stated that it was for her personal use.  (*Id*.)  Mr. McWilliams felt odd about selling the firearm to Defendant.  The background check system was not available on that day so Mr. McWilliams did not then sell the firearm to Defendant. (*Id*.)  On January 5, 2012, Mr. McWilliams sold the Mac-11 firearm to Defendant.  (*Id*. at ¶ 24.)

## II. Applicable Law

Defendant has been charged in Count 1 with making a false statement during the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6).  That section provides:

> It shall be unlawful . . . for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition

> from a licensed importer, licensed
> manufacturer, licensed dealer, or licensed
> collector, knowingly to make any false or
> fictitious oral or written statement or to
> furnish or exhibit any false, fictitious, or
> misrepresented identification, intended or
> likely to deceive such importer,
> manufacturer, dealer, or collector with
> respect to any fact material to the
> lawfulness of the sale or other disposition
> of such firearm or ammunition under the
> provisions of this chapter.

18 U.S.C. § 922(a)(6). To establish a violation of § 922(a)(6), the prosecution is obligated to prove four elements: "(1) the defendant knowingly made (2) a false or fictitious oral or written statement that was (3) material to the lawfulness of the sale or disposition of a firearm, and was (4) intended to deceive or likely to deceive a firearms dealer." *United States v. Abramski*, 706 F.3d 307, 315 (4th Cir. 2013) (quoting *United States v. Harvey*, 653 F.3d 388, 393 (6th Cir. 2011)).

Defendant has been charged in Count 2 with conspiracy to violate the felon-in-possession firearm statute, 18 U.S.C. § 922(g)(1), in violation of 18 U.S.C. § 371. Regarding the alleged conspiracy, it is a federal offense for some ex-felons to possess firearms: "It shall be unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm . . . ." 18 U.S.C. § 922(g)(1). It is well-established that the Government

need not prove all of the elements of the underlying substantive offense in order to prove a conspiracy. *See United States v. Rosen*, 520 F.Supp.2d 786, 791 (E.D. Va. 2007) (citing *Pinkerton v. United States*, 328 U.S. 640, 643 (1946)).

To establish a conspiracy under § 371, the Government must prove "(1) an agreement between two or more people to commit a crime, and (2) an overt act in furtherance of the conspiracy." *United States v. Ellis*, 121 F.3d 908, 922 (4th Cir. 1997); *see also United States v. Reifsteck*, 841 F.2d 701, 704 (6th Cir. 1988). "A tacit or mutual understanding between or among the alleged conspirators is sufficient to show a conspiratorial agreement." *Reifsteck*, 841 F.2d at 704. There must be some showing that the defendant knew the conspiracy's purpose and took some action indicating his participation. *See United States v. Chorman*, 910 F.2d 102, 109 (4th Cir. 1990) (citing *United States v. Laughman*, 618 F.2d 1067, 1075 (4th Cir. 1980)). Proof of the agreement may be established by circumstantial evidence. *See United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996). "Circumstantial evidence tending to prove a conspiracy may consist of a defendant's 'relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy.'" *Id.* at 858 (quoting *United States v. Collazo*, 732 F.2d 1200, 1205 (4th Cir. 1984)). "'Once the

10

existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the connection is slight, is sufficient to convict him with knowing participation in the conspiracy.'" *United States v. Laughman*, 618 F.2d at 1076 (quoting *United States v. Dunn*, 564 F.2d 348, 357 (9th Cir. 1977)).

### III. Conclusions of Law

#### A. Count 1: Violation of 18 U.S.C. § 922(a)(6)

The Court finds that the Government has satisfied its burden as to each element required to establish a violation of § 922(a)(6). The Court will address each element in turn. The Court also notes that Defendant did not offer any argument or evidence in her defense at trial.

First, the Government has proven beyond a reasonable doubt that the statement made by Defendant in response to question 11a on ATF Form 4473 was false. The record demonstrates that Defendant was not the actual transferee/buyer of the subject firearm, nor was she ever intended to be the actual transferee/buyer. As Defendant explained to Agent Grabman, the entire purpose of the transaction was, in essence, to enable the transfer of the firearm to Mr. McLeod. Indeed, the parties have stipulated to testimony indicating that Defendant admitted that she purchased the subject firearm at the request of Mr. McLeod, with the intent of transferring the

11

firearm to Mr. McLeod. Defendant detailed her arrangement with Mr. McLeod, explaining that Mr. McLeod would select firearms from Valley Trader magazines that he wanted Defendant to purchase. Defendant then would contact the seller of the selected firearm, complete the transaction, and thereafter deliver the firearm to Mr. McLeod. Defendant further stated that she was unaware of what became of the firearms after she transferred them into Mr. McLeod's possession. The Court finds that, given the strength of the record, the Government has proven beyond a reasonable doubt that the statement made by Defendant in response to question 11a on ATF Form 4473 was false. Consequently, the first required element to establish a violation of § 922(a)(6) has been fulfilled.

Second, the Government has proven beyond a reasonable doubt that Defendant knowingly made the statement in question. The record demonstrates that Defendant completed ATF Form 4473 and marked a box labeled "yes" in response to question 11a. She did so despite question 11a's bolded disclaimer that explains that an individual is not an actual buyer if they are buying the firearm on behalf of another person. Defendant then expressly reiterated that the firearm was for her, as she had done on ATF Form 4473, when orally questioned by Mr. Simon. Defendant later explained to Agent Grabman that the firearm was requested by and purchased on behalf of Mr. McLeod. In short, based upon the

record, the Government has proven beyond a reasonable doubt that Defendant knowingly made the statement in question, thereby fulfilling the second element required to establish a violation of § 922(a)(6).

Third, the aforementioned false statement was material to lawfulness of the sale or disposition of the firearm. The Fourth Circuit has held that the identity of the actual purchaser of a firearm is a constant that is always material to the lawfulness of a firearm acquisition under § 922(a)(6). *See Abramski*, 706 F.3d at 316; *see also United States v. Frazier*, 605 F.3d 1271, 1280 (11th Cir. 2010); *United States v. Morales*, 687 F.3d 697 (6th Cir. 2012). The Court found in its foregoing analysis that Defendant made a false statement to the licensed dealer when she answered "yes" to question 11a on ATF Form 4473, assuring the dealer that she was the actual buyer. The record demonstrates that Defendant was not the actual transferee/buyer of the subject firearm, nor was she ever intended to be the actual transferee/buyer of the firearm. Rather, Defendant purchased the subject firearm on behalf of Mr. McLeod, at his request, and with the intent of transferring the firearm to him. As the identity of the actual purchaser of the firearm was material to the lawfulness of its acquisition, the Court finds that the third element required in establishing a violation of § 922(a)(6) has been fulfilled.

Fourth, the Government has proven beyond a reasonable doubt that the aforementioned false statement was intended to deceive or likely to deceive the firearms dealer. The plain language of § 922(a)(6) permits the Government to carry its burden of proof with respect to this element in either of two ways. It may prove that a defendant's statement was intended to deceive the dealer or that the statement was likely to deceive the dealer. *See United States v. Harrelson*, 705 F.2d 733, 736 (5th Cir. 1983) (noting that § 922(a)(6) is a disjunctive statute).[3] The Fourth Circuit has repeatedly held that "[e]vidence that a defendant made a knowing misrepresentation of a fact material to the legality of the sale is sufficient to permit a reasonable [fact finder] to conclude that the defendant possessed the intent to deceive the dealer or, alternatively, that his statement was likely to deceive such dealer." *United States v. Christian*, 170 F. App'x 824, 825 (4th Cir. 2006)(unpublished)(quoting *Rahman*, 83 F.3d at 93). The Government has shown that Defendant knowingly made a false statement material to lawfulness of the sale of the firearm when she stated on ATF Form 4473 that she was the actual

---

[3] The "intended to deceive" prong focuses on the subjective mental state of the defendant, so the defendant must have intended to deceive the dealer in order for the Government to obtain a conviction under this prong. *See United States v. Rahman*, 83 F.3d 89, 93 (4th Cir. 1996) (citing *United States v. Brebner*, 951 F.2d 1017, 1028 (9th Cir. 1991)). Under the "likely to deceive" prong, on the other hand, the intent of the defendant to deceive the dealer is irrelevant; this clause focuses on the statement itself and whether it was likely to cause deception of the dealer. *Id*.

transferee/buyer of the firearm.  Consequently, this Court may reasonably conclude Defendant possessed the intent to deceive the dealer.  This conclusion is further supported by Defendant's express repetition of the false statement when questioned by Mr. Simon, as well as Defendant's statements to Agent Grabman.  Considering the strength of the record, and in light of the Court's foregoing analysis, the Court concludes that this fourth element has been fulfilled.

### B.   Count 2: Violation of 18 U.S.C. § 371

The Court finds that the Government has satisfied its burden and adduced sufficient evidence to establish a violation of 18 U.S.C. § 371.  The Court will address each required element in turn.  The Court also notes that Defendant did not offer any argument or evidence in her defense at trial.

First, the Court believes that the Government has established beyond a reasonable doubt that Defendant and Mr. McLeod agreed to act together to violate 18 U.S.C. § 922(g)(1).  Defendant explained the details of the scheme to law enforcement, describing the means by which the she would make straw purchases of firearms at the request of Mr. McLeod, on his behalf, and with the intent of transferring the firearms to him.  Defendant would contact the seller of a firearm selected by Mr. McLeod from Valley Trader magazine, complete the purchase of the firearm from the seller, and thereafter deliver the selected

firearm into the possession of Mr. McLeod.  The record
demonstrates that Defendant explained to law enforcement that
she understood that she was purchasing firearms on behalf of Mr.
McLeod because, as a convicted felon, Mr. McLeod legally could
not purchase firearms by himself.  For her part, Defendant has
not offered any defense or evidence that contravenes the notion
that such an agreement existed.  Given the strength of the
record, and having particularly considered Defendant's
statements to law enforcement, the Court finds that an agreement
existed between Defendant and Mr. McLeod to act together to
violate 18 U.S.C. § 922(g)(1).

Second, the Court finds that the Government has proven
beyond a reasonable doubt that Defendant committed an overt act
in furtherance of the conspiracy.[4]  Based upon the evidence
adduced regarding Defendant's transactions with Mr. Montgomery,
Mr. Hart, and Mr. McWilliams, as well as Defendant's purchase of
the Draco AK-47 pistol from Virginia Arms, the record
sufficiently demonstrates that Defendant made multiple firearm
purchases in furtherance of the conspiracy to violate the felon-
in-possession firearm statute.  Defendant has not offered any
defense or evidence suggesting that she did not make those

---

[4] The transfer of firearms in this case is an overt act, and an overt act does not have to be, in and of itself, criminal. *See Yates v. United States*, 354 U.S. 298, 334 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978); *United States v. Hermes*, 847 F.2d 493, 495-96 (8th Cir. 1988); *United States v. Medina*, 761 F.2d 12, 15 (1st Cir. 1985); *United States v. Donahue*, 539 F.2d 1131, 1136 (8th Cir. 1976).

16

purchases.  Similarly, Defendant has not offered any defense or evidence suggesting that the purchases were not made in furtherance of the conspiracy.  Perhaps most incriminating to Defendant, however, were her statements to law enforcement on May 24, 2012.  Among other admissions, Defendant acknowledged that the Draco AK-47 pistol purchased from Virginia Arms was obtained at the request of Mr. McLeod and with the intent of giving the firearm to Mr. McLeod.  Defendant's statements leave little doubt that the Draco AK-47 pistol was purchased in furtherance of the conspiracy.  As the Government need only prove that at least one overt act was committed in furtherance of the conspiracy, the Court finds that Defendant's purchase of the Draco AK-47 pistol purchased from Virginia Arms suffices to fulfill the second required element.  *See United States v. Caudle*, 758 F.2d 994, 997 (4th Cir. 1985) (stating that "[t]he government need only prove one overt act listed in the indictment to sustain a conviction")(citing *United States v. Anderson*, 611 F.2d 504, 510 (4th Cir. 1979)).

## IV. Conclusion

For the foregoing reasons, the Court finds Defendant Brita Lanette Jackson guilty of making a false statement in connection with the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6), as well as conspiracy, in violation 18 U.S.C. § 371.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| June 20, 2013 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |